1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHAMPION LABORATORIES, INC,<br><br>                              Plaintiff,<br><br>        v.<br><br>PARKER-HANNIFIN CORPORATION, *et al*,<br><br>                              Defendants. | 1:10-CV-02371-OWW-DLB<br><br>MEMORANDUM DECISION RE: DEFENDANTS PARKER-HANNAFIN AND PARKER INTANGIBLES LLC'S MOTION TO DISMISS (Doc. 16) |

## I.   INTRODUCTION.

Plaintiff Champion Laboratories, Inc. ("Champion") filed this action on December 20, 2010, alleging two violations of the False Marking Statute, 35 U.S.C. § 292, by Defendants Parker-Hannifin Corp. and Parker Intangibles, LLC (collectively "Parker").   The Complaint also alleges violations of the Lanham Act § 43(a), 15 U.S.C. § 1125(a), and California Business & Professions Code §§ 17200 et seq.

Defendants move to dismiss for lack of subject-matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) and for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).   The substance of Parker's challenge is that a "first-to-file" limitation on false patent marking qui tam actions jurisdictionally bars Plaintiff's actions.

1

1

## II. **BACKGROUND**.

2   The following background facts are taken from the parties'
3  submissions in connection with the motions and other documents on
4  file in this case.

5   Champion is a Delaware corporation that has its principal
6  place of business in Albion, Illinois.  Compl. ¶ 1.  Parker is a
7  Delaware corporation that has its principal place of business in
8  Cleveland, Ohio.  Id. ¶ 2.  Parker operates a division of its
9  filter business in Modesto, California (referred to as the "Racor
10 Division").  Id. ¶¶ 3, 22.

11   Both Champion and Parker are automotive suppliers engaged in
12 the business of producing and selling automobile parts to car
13 manufacturers.  Both parties produce fuel filtration products for
14 Ford trucks equipped with the "Powerstroke" diesel engine.  Parker
15 was designated as the original equipment supplier for Ford's
16 filtration system and its replacement filter is designated model
17 number "PF-L2016."  Id. ¶ 11.  Parker owns and licenses a number of
18 patents relevant to the PF-L2016 filter, including Patent No.
19 7,086,537 ("the '537 Patent") and Patent No. 6,837,993 ("the '993
20 Patent").[1]  Parker also designs, makes and sells other components of
21 the filtration system and allegedly "has the ability to control the
22 design of the [filtration] system."  Id. ¶ 30.

23   Champion's replacement filter is designated by the model
24 number "LP-2017."  Id. ¶ 29.

25

26   [1] Parker claims that its patents "disclose a new and unique
27 filter assembly that prevents an improper filter element from being
   used," resulting in the "reduction of mess and environmental issues
28 that can occur during an elemental change."

**2**

1    This lawsuit presents one more chapter in the litigation
2  between Champion and Parker concerning alleged patent infringement
3  and anti-competitive business practices. A more thorough
4  recitation of the varied disputes between the parties is found in
5  *Parker-Hannifin Corp. v. Wix Filtration Corp.*, Nos. 1:07 CV 1374,
6  1:07 CV 1375, 2011 WL 976559 (N.D. Ohio Mar. 17, 2011),
7  *Parker-Hannifin Corp. v. Champion Laboratories, Inc.*, No.
8  1:06-CV-2616, 2008 WL 3166318 (N.D. Ohio Aug. 4, 2011) and *Champion
9  Laboratories, Inc. v. Parker-Hannifin Corp.*, 616 F. Supp. 2d 684
10  (E.D. Mich. 2009).[2]

11    The Complaint, filed on December 20, 2010 at 11:18 p.m. PST,
12  arises out of Champion's claims that Parker marked its product, the
13  Parker 2016 replacement filter, with the '537 and '993 patent
14  designations despite the fact that "the claims of the ['537 and
15  '993] Patent[s] are inapplicable to the Parker 2016 Filter."
16  Compl. ¶¶ 15-16. The complaint accuses Parker of "intentionally
17  includ[ing] the ['537 and '993] Patent[s] in the patent markings of
18  the Parker 2016 Filter in an attempt to deter competitors from
19  attempting to design, produce, market, or sell a competing filter."
20  Id. ¶¶ 59, 74. Champion brings this action as a qui tam proceeding
21  to recover civil fines on behalf of the United States Government.[3]

22  _____

23    [2] *Champion Laboratories, Inc. v. Parker-Hannifin Corp.*, 616 F.
   Supp. 2d at 687, involved Champion's claims that Parker and/or its
24  Racor affiliate unlawfully "disparaged its product" to General
   Motors "in an effort to recover the GM fuel filter business Racor
25  had previously lost to Champion."

26    [3] Pursuant to 35 U.S.C. § 292, Champion seeks, *inter alia*, an
27  award of monetary damages against Parker in the amount of $500 per
   false marking offense, one half which is to be paid to the United
28  States. Id. ¶¶ 15-16. Plaintiff also seeks injunctive relief and

**3**

Plaintiff's third and fourth claims allege violations of federal and state unfair competition and false advertising laws, predicated on Parker's alleged misrepresentations of the applicability of the '537 and '993 patents to the Parker 2016 filter elements.  Id. ¶¶ 85-106.[4]

Parker moves to dismiss this action based on a provision of the False Claims Act, 31 U.S.C. § 3730(b)(5), which purportedly creates a first-to-file limitation that jurisdictionally bars Plaintiff's action.  Parker claims that nearly three weeks before Plaintiff filed the present suit, a different Plaintiff filed a separate false patent marking qui tam action against Parker based on the same material allegations.

Specifically, on December 2, 2010, Tex Pat, LLC ("Tex Pat") filed a qui tam action against Parker as a relator on behalf of the United States in the U.S. District Court for the Eastern District of Texas, *Tex Pat, LLC v. Parker-Hannifin Corp.*, No. 5:10-CV-00202 (E.D. Tex.).  Tex Pat's amended complaint, filed on December 20, 2010 at 9:35 p.m. PST, alleged that Parker's 2016 filter element was falsely marked with the '537 and '993 patents.  Parker represents that the Tex Pat action was settled on December 21, 2010 and the action was dismissed with prejudice on January 11, 2011.[5]

---

attorneys' fees pursuant to 35 U.S.C. § 285.  Compl. ¶¶ 17, 69, 84.

[4] The unfair competition and false advertising claims are brought on behalf of Plaintiff only.

[5] In determining whether a complaint states a claim upon which relief can be granted, the Court can take judicial notice of the docket and files in other judicial proceedings. *See Shaw v. Hahn*, 56 F.3d 1128, 1129 n. 1 (9th Cir. 1995) (when assessing whether a complaint states a claim, courts may take judicial notice of

**4**

Doc. 16-2.   Parker submits that the Tex Pat settlement was acknowledged and accepted by Mr. John Fargo of the Commercial Litigation Branch of the Department of Justice.

Champion opposed the motion on March 11, 2011, contending that its false marking claims are not subject to the first-to-file bar. According to Champion, the motion should be denied to "allow discovery into the circumstances surrounding the negotiation of the settlement."

## III.   LEGAL STANDARD

### A.   Motion to Dismiss

Under Federal Rule of Civil Procedure 12(b)(6), a motion to dismiss can be made and granted when the complaint fails "to state a claim upon which relief can be granted."  Dismissal under Rule 12(b)(6) is appropriate where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory.  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

To sufficiently state a claim to relief and survive a 12(b)(6) motion, a complaint "does not need detailed factual allegations" but the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).   Mere "labels and conclusions" or a

matters of public record); *MGIC Indemnity Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986) (same); Fed. R. Evid. 201(b) & (c) (permitting judicial notice of adjudicative facts).   Pursuant to this rule, the Court takes judicial notice of the dockets, files, and records in the "Tex Pat" litigation, *Tex Pat, LLC v. Parker-Hannifin Corp.*, No. 5:10-CV-00202 (E.D. Tex.).

"formulaic recitation of the elements of a cause of action will not do." *Id*. Rather, there must be "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570.   "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, --- U.S. ----, 129 S.Ct. 1937, 1949 (2009) (internal quotation marks omitted).   "The plausibility standard is not akin to a probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.   Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id*. (internal citation and quotation marks omitted).

In deciding whether to grant a motion to dismiss, the court must accept as true all "well-pleaded factual allegations." *Iqbal*, 129 S.Ct. at 1950. A court is not, however, "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001); *see, e.g., Doe I v. Wal-Mart Stores, Inc.*, --- F.3d ----, 2009 WL 1978730, at *3 (9th Cir. July 10, 2009) ("Plaintiffs' general statement that Wal-Mart exercised control over their day-to-day employment is a conclusion, not a factual allegation stated with any specificity. We need not accept Plaintiffs' unwarranted conclusion in reviewing a motion to dismiss.").

The Ninth Circuit has summarized the governing standard, in light of *Twombly* and *Iqbal*, as follows: "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content,

**6**

1  and reasonable inferences from that content, must be plausibly
2  suggestive of a claim entitling the plaintiff to relief." *Moss v.*
3  *U.S. Secret Service*, 572 F.3d 962 (9th Cir. 2009) (internal
4  quotation marks omitted).

5

6                          IV.  DISCUSSION

7  A.   *False Marking Causes of Action (Claims 1 and 2)*

8       1. *Constitutionality of Qui Tam Actions Under 35 U.S.C. 292*

9       On February 23, 2011, Judge Polster in the Northern District
10 of Ohio found the qui tam provision of 35 U.S.C. § 292(b)
11 unconstitutional.[6] *See Unique Product Solutions, Ltd. v. Hy-Grade*
12 *Valve, Inc.*, --- F. Supp. 2d ----, No. 5:10-CV-1912, 2011 WL 649998
13 (N.D. Ohio Feb. 23, 2011).  Applying the "sufficient control"
14 analysis set forth in *Morrison v. Olson*, 487 U.S. 654 (1988) and
15 applied in *United States ex rel. Taxpayers Against Fraud v. General*
16 *Electric Co.*, 41 F.3d 1032 (6th Cir. 1994), the Court found that
17 the qui tam provision of 35 U.S.C. § 292(b) violated the
18 Appointments and Take Care Clauses of Article II of the United
19 States Constitution by failing to give the Executive Branch
20 sufficient control over the litigation. The Court held that unlike
21 the False Claims Act, "the False Marking statute lacks any of the
22 statutory controls necessary to pass Article II Take Care Clause
23 muster" and represents "a wholesale delegation of criminal law
24 enforcement power to private entities with no control exercised by

25

26       [6] Section 292(b)'s constitutionality was first raised by the
27 Court during oral argument on March 28, 2011.  Supplemental
   briefing was requested at that time to allow the parties to address
28 the issue.

**7**

the Department of Justice [...] [i]t is unlike any statute in the Federal Code with which this Court is familiar."

Since *Unique Product Solutions* was decided, several federal district courts have held that Section 292(b) is constitutional. *See Ford v. Hubbell, Inc.*, No. 10-CV-513, 2011 WL 1259707, at 3 (S.D. Ill. Mar. 31, 2011); *Luka v. The Procter & Gamble Co.*, No. 10-CV-2511, 2011 WL 1118689, at 5-8 (N.D. Ill. Mar. 28, 2011); *Pub. Patent Found., Inc. v. GlaxoSmithKline Consumer, Healthcare, L.P.*, No. 09-CV-5881, 2011 WL 1142917, at 4 (S.D.N.Y. Mar. 22, 2011); *Hy Cite Corp. v. Regal Ware, Inc.*, No. 10-CV-168, 2011 WL 1206768, at 4 (W.D. Wis. Mar. 15, 2011).

While the weight of the district court case law has found Section 292(b) constitutional, a court need not "decide constitutional questions where other grounds are available and dispositive of the issues of the case." *See, e.g., Northwest Austin Mun. Utility Dist. No. One v. Holder*, --- U.S. ----, ----, 129 S.Ct. 2504, 2506, 174 L.Ed.2d 140 (2009). Here, the Court must avoid if it can the issue of section 292(b)'s constitutionality, because the complaint is jurisdictionally barred under the "first-to-file" provision.[7]

### 2.   *First-to-File Bar*

On December 20, 2010, at 11:18 p.m. PST, Champion filed this qui tam action, alleging Parker marked certain of its filtration product with two inapplicable patent numbers in violation of 35

---

[7] Section 292(b)'s constitutionality is presently pending before the Federal Circuit in *FLFMC, LLC v. Wham-O, Inc.*, Case No. 11-1067.

U.S.C. § 292(a).  It is undisputed that Tex-Pat filed an identical lawsuit against Parker in the Eastern District of Texas several weeks before Champion filed this action in the Eastern District of California.  Parker argues that because it had already been sued in the Texas case, Champion lacked standing to bring his identical action here.

Section 292(a) prohibits marking unpatented articles as patented for the purpose of deceiving the public;  each such false marking offense is punishable by a $500 fine.  *See Forest Group, Inc. v. Bon Tool Co.*, 590 F.3d 1295, 1303-04 (Fed. Cir. 2009).  The statute provides that "[a]ny person may sue for the penalty, in which event one-half shall go to the person suing and the other to the use of the United States."  35 U.S.C. § 292(b).

The false marking statute is one of four qui tam statutes remaining on the books;  all were enacted over a century ago.  *See Vermont Agency of Natural Resources v. U.S. ex rel. Stevens*, 529 U.S. 765, 768 n. 1, 120 S.Ct. 1858, 146 L.Ed.2d 836 (2000).  Qui tam laws permit private citizens to file enforcement actions on behalf of the government, in return for a bounty.  *See U.S. ex rel. Hall v. Tribal Dev. Corp.*, 49 F.3d 1208, 1212 (7th Cir. 1995).  "By permitting members of the public to sue on behalf of the government [under 35 U.S.C. § 292], Congress allowed individuals to help control false marking."  *Forest Group, Inc.*, 590 F.3d at 1303-04.

Parker argues that only one private individual can assert a cause of action on behalf of the government in a qui tam action under 35 U.S.C. § 292, and that subsequent filers, such as Champion, lack standing to bring the same claims against the same defendant.

**9**

1    The few cases analyzing the false marking statute support

2  Parker's interpretation.   On similar facts, *Simonian v. Quigley*

3  *Corp.*, No. 10-C-1259, 2010 WL 2837180 (N.D. Ill. July 19, 2010)

4  held that the plaintiff lacked standing to assert a qui tam false

5  marking claim because the operative complaint was identical to an

6  earlier-filed action against the same defendant.   The district

7  court in Simonian relied on *United States v. B.F. Goodrich Co.*, 41

8  F. Supp. 574, 575 (S.D.N.Y. 1941), which recognized a first-to-file

9  limitation in an earlier version of the False Claims Act.   The

10 court compared § 292(b)'s qui tam provision to the qui tam

11 provision analyzed in *B.F. Goodrich,* finding the provisions

12 substantially similar, and then applied the *B.F. Goodrich* reasoning

13 to hold that the plaintiff lacked standing to bring a false marking

14 claim:[8]

15      When confronted with multiple similar actions brought
        against the same defendant, the B .F. Goodrich court
16      noted that "[o]bviously, under the general rule well
        known and so long adhered to, one plaintiff should not
17      be permitted to bring and maintain at the same time more
        than one action for the same relief."  Id.  Because the
18      statute provided for "but one action and one division"
        of any proceeds, the court concluded that "[t]he first
19      plaintiff has sole control of the action" and "second or

20

21      [8] Simonian identified the similarities between the qui tam
     provisions of False Claims Act and the false marking statute:

22
        [An action] may be brought and carried on by any
23      person, as well for himself as for the United States;
        the same shall be at the sole cost and charge of such
24      person .... The person bringing the suit and
        prosecuting it to final judgment shall be entitled to
25      receive one-half the amount of such forfeiture, as well
        as of damages recovered and collected, and the other
26      one-half shall belong to and be paid over to the United
        States ....
27

28 *Id.* at 1 (citing *B.F. Goodrich Co.*, 41 F. Supp. at 575).

**10**

subsequent attempts by others can have no standing."
Id.  Congress later amended the False Claims Act to add
an explicit "first-to-file" provision, see 31 U.S.C. §
3730(b)(5);  the Act's legislative history explains that
"[w]hile there are few known instances of multiple
parties intervening in past qui tam cases ..., the
Committee wishes to clarify in the statute that private
enforcement under the civil False Claims Act is not
meant to produce class actions or multiple separate
suits based on identical facts and circumstances."
S.Rep. No. 99-345, at 25 (1986).

*Id.* at 1.

The court held that "[a]s in the False Claims Act, the false marking statute contains no provision allowing for multiple private plaintiffs to share in a recovery."  *Id.* at 2.  The qui tam provision of false marking statute "contemplates only a single action brought by a private individual on behalf of the United States" and "[j]ust as the United States could not bring multiple identical actions against a defendant under the false marking statute, multiple private plaintiffs cannot do so on the government's behalf."  *Id.*

Here, Champion does not dispute that Tex-Pat filed an identical false marking action against Parker in the Eastern District of Texas several weeks before Champion filed this action in the Eastern District of California. Tex Pat's lawsuit was filed nearly three weeks prior to December 20, 2010, when Champion filed this qui tam action. It is without disputed that Tex Pat's amended complaint, filed several hours before this lawsuit, alleged that the Parker 2016 replacement filter was falsely marked with the '537 and '993 patent numbers.  Instead, Champion argues that the current state of the law is unsettled and that a "competitor" is the proper party to advance a qui tam false marking case.

**11**

Champion's contention the case law is unsettled is erroneous. *Simonian v. Hunter Fan Co.*, No. 10-C-1212, 2010 WL 2720749 (N.D. Ill. July 8, 2010), on which Champion's opposition centers, never reached the issue whether the reasoning behind the first-to-file limitation of 31 U.S.C. § 3730(b)(5) applies with equal force to false patent marking qui tam actions.  *Hunter Fan* refused to consider these arguments because they were first raised in the defendant's reply brief:

> [I]n its reply, Defendant argues that "[35 U.S.C. § 292] only provides for a single lawsuit and a single recovery" and that "even assuming that the 'first-to-file' rule for qui tam actions is not directly applicable to false marking suits, the reasoning behind the 'first-to-file' rule applies equally to [a] qui tam action under 35 U.S.C. § 292 and further supports the plain language of § 292 as only authorizing a single qui tam action for false marking."  . 24, Def.'s Reply at 2-4.)  Defendant, however, has waived these arguments by raising them for the first time in its reply brief. London v. RBS Citizens, N.A., 600 F.3d 742, 747 (7th Cir. 2010).

*Id*. at 3.

The only other district court to reach the issue, *Simonian v. Quigley Corp.*, 2010 WL 2837180, found the reasons for the first-to-file limitation of 31 U.S.C. § 3730(b)(5) apply with equal force to false patent marking qui tam actions.  Champion's false marking claims are barred under the "first-to-file" rule.

Assuming, *arguendo*, that Champion's lawsuit is not barred under the "first-to-file rule," Parker alternatively contends that the dismissal with prejudice in the Texas action has claim preclusive effect.  Champion disagrees, relying on *In re Schimmels,* 127 F.3d 875 (9th Cir. 1997) for the proposition that a prior judgment needs to satisfy due process considerations to have

**12**

1   preclusive effect.  Champion relies on In re Schimmels, 127 F.3d

2   875 (9th Cir. 1997), asserting that a prior judgment needs to

3   satisfy due process considerations to have preclusive effect.

4   Specifically, the Tex Pat judgment is not binding against it until

5   the five "due process" factors prescribed by *Schimmels* are

6   satisfied.

7       Champion's argument is a non-starter. It fails to address the

8   formal prerequisites for claim preclusion and erroneously assumes

9   that it has standing against Parker to challenge the Tex Pat

10  judgment validity.[9]  However, the government is the real party in

11  interest in a qui tam suit and its interest was represented in the

12  Tex Pat litigation. *See Stauffer v. Brooks Bros., Inc*., 619 F.3d

13  1321, 1329 (Fed. Cir. 2010)(holding that claim preclusion precludes

14  the government from bringing duplicative false marking claims

15  against the same defendant from the same markings); *see also*

16  *Simonian v. Irwin. Indus. Tool Co.*, No. 10-1260, 2010 WL 3488129

17  (N.D. Ill. Jan. 18, 2011)(denying motion to amend complaint because

18  of preclusive effect of prior settlement).  The qui tam statute

19  provides for a *single claim* for false marking, not multiple claims

20  for multiple penalties. *See, e.g., Simonian v. Quigley Corp*., 2010

21  WL 2837180 at 2.  The government has exercised and relinquished its

22  right to seek damages from Parker for alleged false markings at

23  issue in this case.

24      Champion's argument contains an additional flaw by incorrectly

25  _____

26      [9] Claim preclusion applies whenever there is (1) an identity
    of claims, (2) a final judgment on the merits, and (3) privity
27  between parties." *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l
    Planning Agency*, 322 F.3d 1064, 1077 (9th Cir. 2003) (footnote and
28  internal quotation marks omitted).

analyzing the *Schimmels*' factors from its own perspective, not that of the government.[10] Although Champion is a "competitor" of Parker, Champion cites no legal authority that competitor status controls the analysis.[11]   In *Schimmels*, the Ninth Circuit applied the five factors to the government's position, not from that of the subsequent relator. *See id.* at 885 ("*the government* was fully aware of its right under the False Claims Act to intervene in the relators' adversary proceeding [...] [i]n addition, *the government* participated in the relators' suit through the presence of its counsel [...]")(emphasis added).   The only case citing *Schimmels*

---

[10] At oral argument, Champion argued the settlement changed, which does not alter that the government received notice.

[11] Similar "competitor only" arguments were unsuccessfully advanced to challenge Article III standing of a non-competitor relator in *Pequignot v. Solo Cup Co.*, 640 F. Supp. 2d 714 (E.D. Va. 2009):

> Solo urges the Court to avoid the constitutional question by construing § 292(b) narrowly. Under this narrow construction, a suit by a plaintiff like Pequignot, who is not a competitor of the company alleged to have engaged in false patent marking, would be barred. Solo supports this argument by citing to several decisions that have restricted false advertising suits under section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), to actions by competitors.
>
> [...]
>
> Together with the overwhelming authority explicitly describing § 292(b) as a qui tam statute, these factors are more than sufficient to conclude that § 292(b) is indeed a qui tam statute, and therefore, that Pequignot has Article III standing, as a partial assignee of the government's claims, to sue Solo for violations of § 292.

*Id.* at 717.

for its due process holding, *U.S. ex rel. Williams v. Bell Helicopter Textron Inc.*, 417 F.3d 450 (5th Cir. 2005), a qui tam case, did not apply the five due process factors and is factually distinguishable from this case. *See id*. at 455 (holding that "dismissal with prejudice as to the United States was unwarranted where, as here, the relator's claims were dismissed on a Rule 12(b)(6) motion based on a lack of specificity in the complaint as required by Rule 9(b)."). *Bell Helicopter* also analyzed res judicata from the government's perspective. *Id*. at 456 ("our ruling would in fact *give the government* further opportunity to look into the allegations of the relator.")(emphasis added). There is similarly no requirement that a business notify its competitors of pending litigation and/or settlements involving its allegedly falsely-marked products. Champion's attempts to expand the qui tam jurisprudence to include a "competitor" exception are unavailing.

In *Schimmels*, the Ninth Circuit held that a summary judgment order against a relator in a qui tam action precluded the government from bringing its own successive False Claims Act case against the defendants for the same claims. Five factors were balanced to determine that preclusion was fair under the circumstances of that case:

> [1] participation by the precluded party in the prior proceeding through intervention, combined discovery, amicus submissions, presence of counsel at hearings, testifying as a witness, advising previous parties;
>
> [2] the extent of congruence between the legal interests and positions of the party to the earlier suit and those of the precluded party;
>
> [3] the quality of representation of the precluded party's interests;
>
> [4] the burdens relitigation poses on the judicial

**15**

1    system; and

2    [5] the cost and harassment that relitigation poses to
     the parties.
3

4    *Id.* at 885 (citing *Southwest Airlines Co. v. Texas International*

5    *Airlines, Inc.*, 546 F.2d 84, 101 (5th Cir.), cert. denied, 434 U.S.

6    832, 98 S.Ct. 117, 54 L.Ed.2d 93 (1977).)

7        Parker has submitted substantial and undisputed evidence to

8    satisfy the *Schimmels'* factors in this case.  The first and second

9    factors are met because the government was provided with a copy of

10   the false marking claims advanced by Tex Pat, as well as the

11   proposed settlement and the terms of dismissal.  The government

12   acknowledged the settlement between Tex Pat and Parker, and

13   accepted settlement remuneration.  The government's confirmation

14   letter to Parker, headed *Tex Pat, LLC v. Parker-Hannifin*

15   *Corporation, et al*, Civil No. 5:10-cv-00202 (E.D. Texas), reads:

16       This letter confirms that we have received your check
         numbered 5138504 in the amount [redacted] payable to John
17       Fargo in the settlement of the above captioned case.  The
         check was received on Thursday, December 23, 2010, by
18       Federal Express.

19
     Decl. of R. Clark, Exh. D., Pg. 1.[12]
20

21       The endorsed settlement check, made out to "John Fargo, Comm

22   Litig[.] Branch, Civil Div[.] United States Dept[.] of Justice,"

23   reveals that the funds were deposited in a government account after

24

25

26       [12] Mr. Robert Clark's declaration was filed under seal on
     February 4, 2011.  The sealed documents were the subject of a
27   status conference on February 23, 2011, when the Court ruled that
     documents would remain under seal for purposes of Parker's Rule
28   12(b) motion.  Doc. 27.

**16**

December 22, 2010.[13] The acceptance of this check by the government represents satisfaction and participation in the settlement to raise estoppel against the government's knowledgeable and binding role in the settlement.

The United States' legal interests and positions are identical as both Tex Pat and Champion seek damages based on the false marking of Parker's filter elements.  Champion incorrectly invokes the *Schimmels*' factors based on its competitor status.  This misapplication is fatal to the arguments supporting the second *Schimmels*' factor.

The third factor is met based on Tex Pat's specific allegations of false marking - which are identical to Champion's - and the government's acceptance of the settlement's terms and amount.  As to the fourth factor, the burden of re-litigating the merits of the false marking claims is significant given that the case was dismissed with prejudice and no inequitable facts exist. Patent litigations are among the most complex, intricate and expensive civil actions, settlements have a "particular value." *See Aro Corp. v. Allied Witan Co*., 531 F.2d 1368, 1372 (6th Cir.), cert. denied, 429 U.S. 862 (1976) ("Settlement is of particular value in patent litigation, the nature of which is often inordinately complex and time consuming. Settlement agreements should therefore be upheld whenever equitable and policy considerations so permit.").

---

[13] A copy of the government's endorsed settlement check was attached to Mr. Robert Clark's declaration (Exh. "E"), filed on February 4, 2011.  Mr. Robert Clark purportedly serves as Associate General Counsel for Parker Hannafin Corporation.

**17**

The fifth *Schimmels*' factor applies for similar reasons, namely the false marking claims were resolved to the satisfaction of the "first filer" (Tex Pat), the government, and the District Court for the Eastern District of Texas.  The government also deposited the settlement funds from the Tex Pat case, raising a number of practical and procedural concerns not discussed in Champion's briefing.

Courts have recognized that in some circumstances a dismissal with prejudice of a later filed action may not bar an earlier-filed action.  *See, e.g., Marin v. HEW, Health Care Fin. Agency*, 769 F.2d 590, 593 (9th Cir. 1985) ("Even without a determination which is literally on the merits, a denial with prejudice may be a final judgment with a res judicata effect as long as the result is not unfair.").  However, those are different cases.[14]  Not according claim preclusive effect to the dismissal with prejudice would be error in this case because Champion has not raised a single fact demonstrating unfairness or inequity.  The government was afforded a full and fair opportunity to litigate the initial qui tam claim against Parker.  The "with prejudice dismissal" from the Eastern District of Texas has claim preclusive effect in this case.

Champion suggests that the circumstances surrounding the Tex

---

[14] *See Kremer v. Chem. Constr. Corp.*, 456 U.S. 461, 480-81, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982) ("the judicially created doctrine of collateral estoppel does not apply when the party against whom the earlier decision is asserted did not have a 'full and fair opportunity' to litigate the claim or issue"); *Clements v. Airport Auth.*, 69 F.3d 321, 328 (9th Cir. 1995) ("[W]e do not give preclusive effect to judgments rendered in proceedings that fail to comply with the minimum standards of due process. In other words, the party against whom preclusion is urged must have had a 'full and fair opportunity' to litigate his claim.").

Pat settlement be reopened and dissected.   It argues that the settlement was "staged" and lacks transparency, submitting the publicly-available settlement terms of a recent qui tam false marking case in the District of Arizona.   While it is unclear if public disclosure is required to finalize a qui tam settlement and voluntary dismissal with prejudice, many of Champion's general concerns are recognized in *Unique Product Solutions, Ltd. v. Hy-Grade Valve, Inc*.  There, the qui tam provision of 35 U.S.C. § 292(b) was found to violate the Appointments and Take Care Clauses of Article II of the United States Constitution by failing to give the Executive Branch sufficient control over the litigation:

> Applying the Morrison "sufficient control" analysis to the False Marking statute, it is clear the government lacks sufficient control to enable the President to "take Care that the Laws be faithfully executed." As discussed, supra, unlike the FCA, the False Marking statute lacks any of the statutory controls necessary to pass Article II Take Care Clause muster.  The False Marking statute essentially represents a wholesale delegation of criminal law enforcement power to private entities with no control exercised by the Department of Justice [...]
>
> Any private entity that believes someone is using an expired or invalid patent can file a criminal lawsuit in the name of the United States, without getting approval from or even notifying the Department of Justice. The case can be litigated without any control or oversight by the Department of Justice. The government has no statutory right to intervene nor does it have a right to limit the participation of the relator. The government does not have the right to stay discovery which may interfere with the government's criminal or civil investigations. The government may not dismiss the action. Finally, the relator may settle the case and bind the government without any involvement or approval by the Department of Justice.
>
> It is therefore essential that the government have control over when such cases are brought, and most importantly, how they are settled.  Such decisions should be made by government attorneys who have no

1      financial stake in the outcome of the litigation or
2  settlement, not by private parties motivated solely by
    the prospect of financial gain.

3

*Id.*

4

    Champion's arguments incorporating *Unique Product Solutions'*

reasoning are not persuasive.  District courts in the Southern

District of New York and Northern District of Illinois have

determined that the government maintains a sufficient level of

control over qui tam actions brought under Section 292(b). *Public*

*Patent Found., Inc. v. GlaxoSmithKline Consumer Healthcare, L.P.,*

2011 WL 1142917 (S.D.N.Y. Mar. 22, 2011) found Section 292

constitutional because, "the Executive Branch is not without the

ability to assert its interests in a [Section 292] qui tam action."

*Id.* at 4 (citation omitted). *Simonian v. Allergan, Inc.,* No. 10-C-

02414, 2011 WL 1599292 (N.D. Ill. April 28 ,2011) specifically

profiled the government's involvement in § 292(b) qui tam actions:[15]

    [T]he law obliges the district court clerk to apprise the
    Director of the PTO — a member of the Executive Branch —
    "of an action under" Title 35 of the U.S.Code.  35 U.S.C.
    § 290.  Such notice must include, as far as known, the
    names and addresses of the parties, the name of the
    inventor, and the designating number of the patent upon
    which the relator has brought the action.  Id.  A qui tam
    action for false marking arises under Title 35, and so the
    Court determines that, contrary to Allergan's argument, the
    Executive Branch receives notice of qui tam false-marking
    claims.

    In addition, the government may request intervention in
    false-marking cases.  See Fed. R. Civ. P. 24(b)(2).

---

    [15] Because the constitutionality of § 292(b) need not be
determined to resolve Parker's motion, it is unnecessary to resolve
the conflict between *Unique Product Solutions* and *Public Patent* and
*Allergan*.  The holdings are discussed because Champion advanced the
lack of government involvement as grounds to deny the motion. This
is consonant with the district court's duty to avoid reaching a
constitutional issue if possible.

1
2
> Moreover, in the event that the government intervenes, the relator may not voluntarily dismiss the case without the government's agreeing to stipulate to the same.  See Fed. R. Civ. P. 41(a)(1)(A)(ii).

3

4
*Id.* at 5.

5   While  discussed  in  the  context  of  § 292(b)'s

6  constitutionality, the *Public Patent* and *Allergan* holdings belie

7  Champion's assertions that the Tex Pat proceeding was a "sham" or

8  lacked legally acceptable levels of government engagement.[16]  The

9

10   [16]  Champion's  "government  participation"  arguments  are
nonsensical.  Champion argues that § 292(b)'s qui tam provision is
11  constitutional while also insisting that the Tex Pat action is
invalid because "the government's interests were [not] adequately
12  represented by Tex Pat."  Champion, however, fails to distinguish
this case from the false marking claims in *Public Patent* and
13  *Allergan*, two cases finding that the government maintains adequate
control over § 292(b) qui tam actions.  Champion further suggests
14  that the Court invalidate the Tex Pat settlement because Parker did
not disclose to the government *how* each false marking claim was
15  settled.   Champion, however, does not cite any authority for this
position  and  the  Court  has  found  none.   Champion refuses to
16  acknowledge that the government received the settlement documents,
which included the amended complaint alleging false marking of the
17  '537 and '993 patent numbers, reviewed them, and then approved the
Tex Pat litigation/settlement.
18

19      *Pequignot v. Solo Cup Co.*, 640 F. Supp. 2d 714, a qui tam
20  case, stated that any arguments against § 292(b) based on policy
concerns are "addressed to the wrong forum."  The Fourth Circuit
21  similarly stated concerning the FCA:

22
> [P]erhaps  Congress  should  have  taken  note  of  the
23  > possibility that [defendants] would be harassed by
> vexatious qui tam suits in federal courts.  Perhaps it
24  > did, but decided that the benefits of the qui tam scheme
> outweighed  its  defects.   In  any  event,  we  have  no
25  > inclination or power to delve into the wisdom of the
> balance Congress struck ... Congress has let loose a
26  > posse of ad hoc deputies ... [Defendants] may prefer the
> dignity of being chased only by the regular troops; if
27  > so, they must seek relief from Congress.

28

**21**

1  government received a part of the settlement consideration.

2       The dismissal with prejudice from the Eastern District of
3  Texas precludes this case.[17]  28 U.S.C. § 1738.

4       Parker's motion to dismiss is GRANTED WITH PREJUDICE as to
5  Champion's false marking claims.

6

7  B.    Unfair Competition and False Advertising (Claims 3 and 4)

8       Champion alleges claims for federal law unfair competition and
9  false advertising under the Lanham Act § 43(a) and state law unfair
10 competition and unfair business practices under Business &
11 Professions Code § 17200.

12      Champion's third claim for violations of the Lanham Act, 15
13 U.S.C. § 1125(a) alleges:

14          86. Parker has attempted to suppress competition from
            Champion by making false and misleading statements regarding
15          the Parker 2016 Filter, including that it is protected by the
            '537 Patent and the '993 Patent.
16
            87. Parker has asserted, both on the product itself and, on
17          information and belief, in promotional materials, that the
            '537 Patent and the '993 Patent apply to the Parker 2016
18          Filter.

19          88. Neither the '537 Patent nor the '993 Patent apply to the
            Parker 2016 Filter.
20
            89. Parker's misrepresentations regarding the applicability
21          of the '537 Patent and the '993 Patent to the Parker 2016
            Filter are material. These misrepresentations have caused,
22          or are likely to cause confusion and mistake by consumers of
            these products.
23

24

25 *U.S. ex rel. Milam v. Univ. of Tex. M.D. Anderson Cancer Ctr.*, 961
   F.2d 46, 49 (4th Cir. 1992).
26
27      [17]  Parker also argues that the doctrine of accord and
   satisfaction bars Champion's false marking claims.  Since there is
28 sufficient reason to grant Parker's motion to dismiss on other
   grounds, these arguments need not be resolved.

**22**

90. Parker's misrepresentations regarding the applicability of the '537 Patent and the '993 Patent to the Parker 2016 Filter are material in that they influence or are likely to influence a consumer's purchasing decisions.

91. Parker's misrepresentations regarding the applicability of the '537 Patent and the '993 Patent to the Parker 2016 Filter is made on the filter itself, which is sold in interstate commerce.

92. Parker has publicized such false and misleading descriptions and representations of fact in violation of the Lanham Act § 43(a), 15 U.S.C. § 1125(a). On information and belief, Parker's aforesaid acts are deliberate and willful.

93. Champion has suffered and, absent judicial relief, is likely to continue to suffer injury as a result of Parker's false and misleading designations and representations concerning the applicability of the '537 Patent and the '993 Patent to the Parker 2016 Filter.

94. Parker's conduct alleged herein is irreparably damaging to Champion and will continue to so damage Champion until restrained by this Court, and, therefore, Champion is without an adequate remedy at law.

95. Champion is entitled, pursuant to 15 U.S.C §§ 1117 and 1125(a), to recover its reasonable attorney's fees and litigation expenses incurred in connection with remedying Parker's false and misleading designations and representations concerning the applicability of the '537 Patent and the '993 Patent to the Parker 2016 Filter.

Compl. ¶¶ 86-95.

Champion's fourth claim for violations of Business & Professions Code § 17200:

97. Parker has attempted to suppress competition by making false and misleading statements regarding the Parker 2016 Filter, including that it has the characteristic of being protected by the '537 Patent and the '993 Patent.

98. Parker has asserted that the '537 Patent and the '993 Patent apply to the Parker 2016 Filter.

99. Neither the '537 Patent nor the '993 Patent apply to the Parker 2016 Filter.

100. Parker's misrepresentations regarding the applicability of the '537 Patent and the '993 Patent to the Parker 2016 Filter are unlawful under 35 U.S.C. § 292 and/or the Lanham Act § 43(a), 15 U.S.C. § 1125(a).

23

101. Parker's misrepresentations regarding the applicability of the '537 Patent and the '993 Patent to the Parker 2016 Filter are material in that such representations cause or are likely to cause confusion and mistake in the market in which Parker and Champion compete, cause or are likely to cause deception amongst consumers and other market participants, and influence or are likely to influence the deceived consumer's purchasing decisions.

102. Parker's misrepresentations regarding the applicability of the '537 Patent and the '993 Patent to the Parker 2016 Filter are shown on the filter itself, which is sold in interstate commerce.

103. Parker has further attempted to suppress competition by changing the filtration system to prevent use of competitors' non-infringing replacement filter elements, including Champion's long core adapter version.

104. Parker's persistent and continuous acts and conduct in incorporating features that serve no functional or aesthetic purpose are unfair in that the economic harm flowing to consumers and competition clearly outweighs its benefits, constituting unfair competition pursuant to Cal. Bus. Prof. Code § 17200.

105. Parker's conduct as alleged above has damaged, and will continue to damage, Champion and has resulted in losses to Champion and an elicit gain of profit to Parker in an amount to be proven at trial in excess of $75,000.

106. The harm caused by Parker's unfair competition is continuing and irreparable at law. Champion has no adequate remedy at law that will compensate it fully for the continuing and irreparable harm it will suffer if the wrongful conduct of Parker is not enjoined.

Id. ¶¶ 97-106.

"Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), prohibits, *inter alia*, the use of any symbol or device which is likely to deceive consumers as to the association, sponsorship, or approval of goods or services by another person." *Wendt v. Host Int'l*, 125 F.3d 806, 812 (9th Cir. 1997). "An express purpose of the Lanham Act is to protect commercial parties against unfair competition." *Abdul-Jabbar*, 85 F.3d at 410 (quoting Waits, 978 F.2d at 1108).

24

1   California's unfair competition law prohibits "any unlawful,
2   unfair or fraudulent business act or practice." *Cel-Tech*
3   *Communic'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th
4   163, 180 (1999). "By proscribing 'any unlawful' business practice,
5   section 17200 'borrows' violations of other laws and treats them as
6   unlawful practices that the unfair competition law makes
7   independently actionable." *Id.* (citation omitted); *Farmers Ins.*
8   *Exch. v. Superior Court*, 2 Cal. 4th 377, 383 (1992). A "defendant
9   cannot be liable under § 17200 for committing unlawful business
10  practices without having violated another law." *Ingles v. Westwood*
11  *One Broadcasting Servs., Inc.*, 129 Cal. App. 4th 1050, 1060 (2005)
12  (internal quotations omitted).

13      The legal framework used to analyze state law unfair
14  competition claims is substantially the same as the framework used
15  to evaluate Lanham Act claims under federal law. *See Denbicare*
16  *U.S.A., Inc. v. Toys R Us, Inc.*, 84 F.3d 1143, 1152 (9th Cir. 1996)
17  ("[S]tate common law claims of unfair competition and actions
18  pursuant to California Business and Professions Code § 17200 are
19  substantially congruent to claims made under the Lanham Act.")
20  (internal citations and quotations omitted).

21      Parker argues that Champion's Lanham Act and UCL claims are
22  precluded because they are predicated on false marking claims that
23  are barred under the "first-to-file" rule.  In the alternative,
24  Parker argues that Plaintiff cannot plead or prove the prerequisite
25  conduct that is required to state a claim.

26      Parker's arguments are well-taken.  To the extent that
27  Champion's claims are premised only on the false marking of the PF-
28  L2016 filter with the '993 and/or '537 patent numbers, they are

1   preempted. *Compare Semiconductor Energy Lab. Co. v. Samsung Elecs.*
2   *Co.*, 204 F.3d 1368, 1382 (Fed. Cir. 2000)("If the conduct
3   constituting inequitable conduct, without more, could be considered
4   predicate acts under federal or state RICO law, then every accused
5   infringer asserting an inequitable conduct defense would also bring
6   such a RICO counterclaim [...] [a]n additional state cause of
7   action predicated so squarely on the acts of inequitable conduct
8   would be 'contrary to Congress' preemptive regulation in the area
9   of patent law.'") *with Rodime PLC v. Seagate Technology, Inc.*, 174
10  F.3d 1294, 1303-04 (Fed. Cir. 1999)("the patent laws do not preempt
11  Rodime's state law claims [...] Rodime based its claims on
12  Seagate's alleged efforts to dissuade other disk drive companies
13  from taking a license from Rodime [...] [t]he patent laws will not
14  preempt such claims if they include additional elements not found
15  in the federal patent law cause of action and if they are not an
16  impermissible attempt to offer patent-like protection to subject
17  matter addressed by federal law.")(citation omitted);' *accord Veto*
18  *Pro Pac, LLC v. Custom Leathercraft Mfg. Co., Inc.*, No.
19  3:08-cv-302-VLB, 2009 WL 276369, 2 (D.Conn. Feb. 5, 2009) (federal
20  patent law preempts state law claims that merely incorporate by
21  reference two counts of patent infringement and assert that the
22  infringement also constitutes unjust enrichment and unfair
23  competition under Connecticut law). Parker correctly observes that
24  Champion's unfair competition claims are preempted if they are
25  based entirely on the allegation of false marking and unexpired
26  patent numbers.

27      Champion does not dispute this general rule, rather it asserts
28  that "courts have found that patent laws do not preempt other laws

directed to policing 'bad faith misconduct in the marketplace.'" Relying on *King Tuna, Inc. v. Anova Food, Inc.*, No. CV-07-07451-ODW-AJWx, 2011 WL 839378 (C.D. Cal. Feb. 24, 2011) and *DP Wagner Mfg., Inc. v. Pro Sys., Inc.*, 434 F. Supp. 2d 445, 461 (S.D. Tex. 2006), Champion argues that its unfair competition claims survive because it adequately pleaded that Parker acted in "bad faith." Champion points to paragraphs 58, 59, 63, 73 and 74 of its complaint to support an allegation of "bad faith in the marketplace":

> 58. Upon information and belief, Parker knows, or should know (by itself or by its representatives), that the '537 Patent marked on the Parker 2016 Filter does not apply to the Filter. The individually packaged Parker 2016 Filter does not include "a separate annular end piece [that is] located in sealing relation with the first end cap," an element as required by the '537 Patent.
>
> 59. Upon information and belief, Parker, with knowledge that patents have a specific scope and that a patent confers no rights outside the scope of the patent claims, intentionally included the '537 Patent in the patent markings of the Parker 2016 Filter in an attempt to deter competitors from attempting to design, produce, market, or sell a competing filter.
>
> 63. Upon information and belief, Parker knows, or reasonably should know, that marking the Parker 2016 Patent with false patent statements was and is illegal under Title 35 of the United States Code. At a minimum, Parker had and has no reasonable basis to believe that its marking was or is proper or otherwise permitted under federal law.
>
> 73. Upon information and belief, Parker knows, or should know (by itself or by its representatives), that the '993 Patent marked on the Parker 2016 Filter does not apply to the Parker 2016 Filter. The individually packaged Parker 2016 Filter sold by Parker does not include one or more of the following elements required by the '993 Patent: a filter housing, a central support core, a locking assembly, and a main spring.
>
> 74. Upon information and belief, Parker, with knowledge that patents have a specific scope and that a patent confers no rights outside the scope of the patent

1
2
3

> claims, intentionally included the '993 Patent in the
> patent markings of the Parker 2016 Filter in an attempt
> to deter competitors from attempting to design,
> produce, market, or sell a competing filter.

4 Compl. ¶¶ 58, 59, 63, 73-74.

5      It is unclear how paragraphs 58, 59, 63, 73 and 74 adequately
6 allege marketplace bad faith to support Champion's unfair
7 competition claims. *DP Wagner Mfg., Inc. v. Pro Sys., Inc*. was
8 decided pre-*Iqbal* and paragraphs 58, 59, 63, 73 and 74 fail to
9 satisfy the applicable pleading standard. *See, e.g., CardioNet,*
10 *Inc. v. LifeWatch Corp*., No. 07-C-6625, 2008 WL 567031, at 2 (N.D.
11 Ill. Feb. 27, 2008) ("Claims that allege [] false advertising under
12 the Lanham Act are subject to the heightened pleading requirements
13 of Fed. R. Civ. P. 9(b).").[18]   According to Champion, if a party
14 alleges false marking was performed "intentionally" or "with
15 knowledge that the patent was inapplicable to the product," the
16 unfair competition claim survives a pleading challenge.  That is
17 not the law, especially considering that the complaint's only
18 factual assertions refer to Parker's false marking of its filter
19 element with the '537 and '993 patent numbers.

20      Champion rejoins that it has adequately pleaded unfair
21 competition because it alleged that Parker incorporated a non-
22 essential plastic structure into its filter design to "thwart
23 competition from Champion's competing replacement filter."  Compl.

24

25      [18] The parties have not addressed Rule 9(b) in the context of
26 alleging unfair competition claims involving "bad faith" or
"fraud."   Noteworthy is that the Federal Circuit in *In re BP*
27 *Lubricants USA Inc.*, No. 960, 2011 WL 873147, at 2 (Fed. Cir. Mar.
15, 2011), recently held that Rule 9(b)'s particularity requirement
28 applied to false marking claims.

1  ¶¶ 45-46.[19]  However, the "plastic structure" design allegations are

2  similarly   nonspecific   under   *Iqbal*;   more   critically,   the

3  allegations fall short of the "marketplace bad faith" discussion in

4  *Rodime  PLC  v.  Seagate  Technology,  Inc.*, 174 F.3d 1294, the

5  principal authority relied upon by Champion.   There, the Federal

6  Circuit  held  that  federal  patent  laws  did  not  preempt  the

7  plaintiff's unfair competition claim because "[plaintiff] based is

8  claims  on  [defendant's]  alleged  efforts  to  dissuade  other  disk

9  drive companies from taking a license from Rodime."  *Id.* at 1306.

10  Based on this alleged *affirmative* marketplace place manipulation,

11  the Court held the unfair competition claim survived a preemption

12  challenge: "The patent laws will not preempt such claims if they

13  include  *additional elements*  not found  in the  federal patent  law

14  cause of action and if they are not an impermissible attempt to

15  offer patent-like protection to subject matter addressed by federal

16  law."  *Id*. (citation omitted)(emphasis added).   Subsequent Federal

17  Circuit  decisions  similarly  hold  that  "marketplace  bad  faith"

18  requires more than conclusory allegations of false marking/patent

19  infringement and alleged (and unexplained) anti-competitive design

20

21       [19] Paragraphs 45 & 46 of Champion's complaint provide:

22
         45. On information and belief, this plastic structure
23       added to the Core serves no design or engineering purpose
         other than to thwart the competitive use of the long core
24       adapter,  an  otherwise  non-infringing  and  lawfully
         competing product.
25
         46. On information and belief, Parker engineers knew that
26       incorporating this plastic structure served no design or
         engineering  purpose,  but  instead  designed  and
27       incorporated this change solely to thwart competition
28       from Champion's competing replacement filter.

**29**

features.  *See Serio-US Industries, Inc. v. Plastic Recovery Technologies Corp.* 459 F.3d 1311 (Fed. Cir. 2006)(holding that courts "will impose [unfair competition] liability on a patentee for marketplace statements only if the *statements* [were] made in bad faith.")(emphasis added).  The allegations/arguments in *Rodime PLC* and *Serio-US Industries* materially differ from Champion's allegations.

At oral argument, Champion asserted that its false advertising claim (Lanham Act only) survived because it alleged that Parker "wrongfully and illegally" marketed its patent rights "[t]hrough its product packaging and other promotions."[20]  Champion's latest contention fails for three reasons.  One, the advertising allegations are conclusory, abridged and, as a result, unclear: Champion fails to clearly allege that the alleged "advertisement" is found *inside the filter package.*[21]  Champion also fails to allege

---

[20] "The elements of a Lanham Act § 43(a) false advertising claim are: (1) a false statement of fact by the defendant in a commercial advertisement about its own ... product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a lessening of the goodwill associated with its products." *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997) (citations omitted).

[21] This lack of explanation concerning the "advertisement" resulted in substantial confusion and a nearly sixty-minute oral argument; the parties even introduced demonstrative evidence - the actual filter box - during the Rule 12 motion hearing.  Further complicating matters, the parties' briefing spanned several hundred pages, many documents filed under seal, and focused on the first-to-file jurisdictional bar and *In re Schimmels*, 127 F.3d 875, not

how the consumer views the "advertisement" or how it directly impacts consumer choice.  Two, the allegations rely solely on Parker's alleged false marking of its filter element with the '537 and '993 patent numbers, nothing more.[22]  Three, the allegations do not meet the *Iqbal* pleading threshold; facts, not labels or black letter restatements, plead actionable claims in federal court.  *See Twombly*, 550 U.S. at 570 (2007) (holding that a "plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic

---

the unfair competition claims.  Neither party requested enlarged page limits or extended oral argument.  See E.D. Local Rule 78-230(g)("Any party that believes that extended oral argument, more than 10 minutes per side or 20 minutes in the aggregate, will be required shall notify the courtroom deputy clerk so that the hearing may be rescheduled if deemed appropriate by the Court.").

[22] In a patent infringement case decided in the Northern District of California, *Hull v. Rothhammer Intern., Inc.*, No. C 05-03538-WHA, 2006 WL 988818 (N.D. Cal. Apr. 13, 2006), the plaintiff's state law claims were dismissed because "the unfair-competition claim is based on the same set of transactional facts as the first patent infringement claim":

> As a basis for the Section 17200 claim, plaintiffs "reallege[d] and incorporate[d] by reference the allegations" underlying the new patent-infringement claim." Beyond this, plaintiffs merely have alleged that "RII's deliberate copying and imitation of Plaintiffs' training fin devices is an act of unfair competition." Essentially, plaintiffs have re-clothed their patent-infringement claim under a different legal theory. "It will remain as clear as ever that a mere change in legal theory does not create a new cause of action."

*Id*. at 5 (citations omitted); *see also Delano Farms Co. v. Cal. Table Grape Comm'n,* 2010 WL 2952358, at 26 (E.D. Cal. 2010) (finding that "where a state law cause of action hinges on a finding that implicates federal patent law (such as the scope of a patent), the state law must yield.")(citation omitted).

1    recitation of the elements of a cause of action will not do.").

2    There are additional concerns as to the plausibility of Champion's

3    arguments that need not be addressed at this time.[23]

4        As currently pled, Champion's unfair competition allegations

5    are conclusory, incomplete and primarily refer to the scope of

6    Parker's false marking of its filter element with the '537 and '993

7    patent numbers.   Supreme Court authority requires that Champion

8    plead facts to appropriately identify with particularity the

9    conduct undertaken by Parker that violates unfair competition laws.

10   Champion has not done so.   Parker's motion is GRANTED.

11       Champion's complaint inadequately alleges Lanham Act

12   violations and unfair competition under Section 17200.   Parker's

13   motion to dismiss Champions's unfair competition claims is granted

14   with leave to amend.   Champion is afforded the opportunity to amend

15   its complaint to explain the basis for its Lanham Act and Section

16   17200 claims, with greater particularity and focus on Parker's

17   alleged unfair competitive business practices, including any

18   alleged bad faith and/or improper advertising.   Any amended

19   pleading shall conform with Rules 8 and 11 of the Federal Rules of

20   Civil Procedure.

21

22       [23] It is uncertain if the "inside of the filter box" is the

23   same class/type of advertisement prohibited by the Lanham Act. *See*
     *Sanderson v. Spectrum Labs, Inc.*, 227 F.Supp.2d 1001, 1008 (N.D.

24   Ind. 2000)("If a written publication is not advertising material,
     or distributed to the general public for the purpose of promoting

25   a product, it does not constitute commercial advertising under the
     Lanham Act."); *see also Gillette Co. v. Norelco Consumer Products*

26   *Co.*, 946 F.Supp. 115, 134 (D. Mass. 1996)("Statements made inside
     the product's packaging, available to consumers only after the

27   purchase has been made, do not affect the choice to purchase, that
     choice having been made at an earlier point.").

28

V. <u>CONCLUSION</u>.

For the reasons stated:

1.   Champion's false marking claims against Parker are DISMISSED WITH PREJUDICE;

2.   Champion's Lanham Act claim against Parker is DISMISSED WITHOUT PREJUDICE; and

3.   Champion's Section 17200 claim against Parker is DISMISSED WITHOUT PREJUDICE.


Defendant Parker shall submit a form of order consistent with, and within five (5) days following electronic service of, this memorandum decision.

Any amended complaint shall be filed within twenty ("20") days following date of electric service of this decision.   Defendant shall have twenty (20) days to respond.

IT IS SO ORDERED.

**Dated:   May 16, 2011**            **/s/ Oliver W. Wanger**
                          UNITED STATES DISTRICT JUDGE